UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

YUNG-TING SU,

             Plaintiff,

v.

LEECHIN SU and LEADERTECH
SYSTEMS OF CHICAGO, INC.,

             Defendants.

No. 19-cv-07772
Judge Franklin U. Valderrama

## MEMORANDUM OPINION AND ORDER

Plaintiff Yung-Ting Su (Yung-Ting), a minority shareholder in Leadertech Systems of Chicago, Inc. (Leadertech), brings this lawsuit against (1) her sister, Leechin Su (Leechin), the President of Leadertech, and (2) nominally, Leadertech, alleging that Leechin breached her fiduciary duties and engaged in shareholder oppression by engaging in self-dealing and other misconduct. Yung-Ting alleges that Leechin's actions violated the Illinois Business Corporation Act of 1983, 805 ILCS 5/12.56 (IBCA) (Count I), and asserts derivative claims for breach of fiduciary duty (Count II) and breach of contract (Count III). For the various claims, Yung-Ting seeks compensatory damages, punitive damages, a fair value buyout of her shares of Leadertech, the appointment of a receiver, Leechin's removal as a director and officer, the appointment of a provisional board, and attorneys' fees and costs. R. 28, First Amended Verified Complaint (FAC) at 26. Before the Court are two motions to

dismiss the FAC filed by Defendants[1]. R. 73, First Mot. Dismiss; R. 120, Second Mot. Dismiss. For the following reasons, the first motion [73] is granted in part and denied in part, and the second motion [120] is denied.

### Background[2]

This case involves the Su family, which consists of Yung-Ting, Leechin, their four other sisters (Li-Jung Su, Li-Ying Su, Leewen Su Chen, and Mai-Lin Su Lee (Mai-Lin)), their father A-Yung Su (A-Yung), and their mother Pi Yun Su (Pi Yun). FAC ¶ 6. Yung-Ting is a citizen of California, where she resides, and Leechin is a citizen of Illinois, where she resides. *Id.* ¶¶ 2–3, 15. Leadertech is a domestic corporation with its registered address and principal place of business in Illinois. *Id.* ¶ 3.

## I.     Leadertech History, Bylaws, and Corporate Governance

A-Yung founded Leadertech in 1992, a company in the business of importing and distributing computer and security part systems. FAC ¶¶ 7–8. At all relevant times, Yung-Ting has been a shareholder of Leadertech, and Leechin has been a shareholder, officer, and director of Leadertech. *Id.* ¶¶ 1–2. Specifically, Leechin, Yung-Ting, and Mai-Lin were the only three initial shareholders, each acquiring 20,000 shares of Leadertech in 1992. *Id.* ¶ 9. In 1993, Mai-Lin sold her 20,000 shares

---

[1]For ease of reading, and because Leadertech is a nominal defendant, this opinion uses "Leechin" when referring to Defendants.

[2]The Court accepts as true all of the well-pleaded facts in the FAC, and draws all reasonable inferences in favor of Yung-Ting. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

to A-Yung. *Id.* ¶ 10. There are still only 60,000 shares of Leadertech issued and outstanding. *Id.* ¶ 11.

In June 1992, Leadertech's shareholders adopted its bylaws. FAC ¶ 25. The bylaws state, in part, that (1) a "majority of the board of directors may establish reasonable compensation for their services and the services of other officers . . ."; (2) the board may only exercise its authority informally, without a meeting, if all directors consent in writing; (3) the "salaries of the officers shall be fixed from time to time by the board of directors"; (4) "No loans shall be contracted on behalf of the corporation and no evidence of indebtedness shall be issued in its name unless authorized by a resolution of the board of directors"; (5) the "person in whose name shares stand on the books of the corporation shall be deemed the owner thereof for all purposes as regards the corporation"; and (6) "Transfers of shares of the corporation shall be recorded on the books of the corporation. . . . A certificate presented for transfer must be duly endorsed and accompanied by proper guaranty of signature and other appropriate assurances that the endorsement is effective." *Id.* ¶ 26.

Leechin was the initial president of Leadertech and has been its president continuously to date. FAC ¶ 12. Initially, Leechin, Mai-Lin, and Yung-Ting were Leadertech's directors, and there has never been a subsequent election appointing directors or officers of Leadertech—indeed, until 2019 when this dispute arose, there had never been any meetings at all. *Id.* ¶ 13. Since the early 1990s, Leechin has acted as Leadertech's sole director and president, while Yung-Ting has been a passive

3

shareholder, not acting as a director or officer or having any control over Leadertech's management. *Id.* ¶ 14. Yung-Ting had assumed that Leechin was lawfully operating Leadertech for the benefit of its shareholders, despite that she and Leechin's relationship had been distant. *Id.* ¶ 18.

From approximately 1995 through 2012, Leadertech made profit distributions to its shareholders. FAC ¶ 17. From 1995 through 2003, when the distributions were substantial, Yung-Ting generally paid taxes using a portion of the distributions and returned the remainder to Leadertech via check, based on her belief that Leadertech needed funds. *Id.* The distributions she received from Leadertech decreased over time. *Id.*

## II.    Yung-Ting Demands Leadertech Information

After numerous cases involving members of the Su family and the parents' estates and trusts were filed in California state court between 2013 and 2019, in April 2019, Yung-Ting retained counsel and demanded Leadertech produce various records pursuant to the IBCA. FAC ¶¶ 19–20 (records demanded included, for example, bylaws, shareholder and directors' meeting minutes and resolutions, annual profit-and-loss detail statements and balance sheets, tax returns, and documents regarding transfer of Leadertech real estate or other material assets). Ultimately, after Yung-Ting signed a revised non-disclosure agreement proposed by Leechin, in July 2019 Leadertech produced documents including its corporate record book, bylaws, share certificates, share transfer records, resolutions, balance sheets, income statements, and tax returns. *Id.* ¶¶ 21–22. Yung-Ting alleges that this production demonstrated

4

a complex, ongoing scheme by Leechin to defraud Leadertech and Yung-Ting. *Id.* ¶ 19. Since July 2019, Leadertech has declined to provide item-by-item transaction statements, which Yung-Ting asserts would allow her to fully investigate her claims. *Id.* ¶ 23.

Specifically, Yung-Ting alleges that the production indicates the following: (1) Leechin commandeered 20,000 shares of Leadertech stock from her father, A-Yung, over his objection; (2) Leechin transferred Leadertech's real property from Leadertech to another entity she controls; (3) Leechin caused Leadertech to pay substantial rent to that other entity; (4) Leechin has compensated herself excessively; (5) Leechin has created at least one alter ego entity to which she has transferred Leadertech's business and, therefore, profits; and (6) Leechin, upon being confronted, attempted to eliminate Yung-Ting as a Leadertech shareholder by demanding she loan Leadertech $448,000.00 and "invest" an additional $448,000.00 or face Leadertech's dissolution. FAC ¶ 24. Further details regarding these allegations are laid out below.

### III. Leechin's Transfer of 20,000 Shares of Leadertech Stock

From 2009 until 2012, A-Yung and Pi Yun were estranged and lived separately. FAC ¶ 27. Leechin allied herself with her mother, Pi Yun, and did not have a close relationship with A-Yung. *Id.* In September 2012, while A-Yung was dying of cancer and after attempting to get A-Yung to sell his Leadertech shares below fair value, Leechin surreptitiously and without notice issued a share certificate for 20,000 shares of Leadertech stock to Pi Yun, resulting, ostensibly, in Yung-Ting, Leechin, and Pi Yun being the shareholders of record. *Id.* ¶¶ 28–29 (Leechin executed

the share certificate on September 16, 2012). Leechin did not disclose to Yung-Ting, A-Yung, or A-Yung's estate that she had transferred, or purported to transfer, A-Yung's 20,000 shares to Pi Yun in September 2012, nor did she provide notice of the transfer. *Id.* ¶ 30. Leadertech did not hold a shareholder or board of directors meeting regarding the transfer, there was no vote to approve or ratify the transfer, and Leadertech did not enter a resolution approving or ratifying the transfer. *Id.* Yung-Ting was completely unaware of the purported transfer and did not believe any such transfer was possible given that A-Yung had refused to sign a share transfer certificate. *Id.*

A-Yung passed away on September 27, 2012, and Yung-Ting did not obtain information about the above transfer until January 2015. FAC ¶¶ 30–31. A probate matter was opened regarding A-Yung's estate in Los Angeles Superior Court in Los Angeles County, California in 2013. *Id.* ¶ 34. There have since been several claims—some still pending—between A-Yung's estate, Pi Yun (now, her estate) and Leechin. *Id.*

On November 9, 2013, Leechin issued a share certificate for 20,000 shares of Leadertech to the Trustee of the Pi Yun Su Trust—Leechin. FAC ¶ 35. Leechin crossed out Pi Yun's individual share certificate at the same time she executed the certificate for the Trustee of the Pi Yun Su Trust. *Id.* Leechin did not disclose to Yung-Ting that she had transferred, or claimed to transfer, Pi Yun's ostensible 20,000 shares to the Trustee of the Pi Yun Su Trust. *Id.* ¶ 36. Leechin did not provide notice of the transfer, nor was any shareholder or director meeting, vote, or resolution taken

approving it. *Id.* On January 8, 2015, at the direction of Leechin, Pi Yun executed a shareholder proxy authorizing Leechin to vote her trust's shares in Leadertech, and Yung-Ting was not informed. *Id.* ¶ 37. On January 20, 2015, in a filing in the California litigation regarding A-Yung's estate, Leechin disclosed for the first time the purported transfer of A-Yung's shares to Pi Yun in the days before his death, and disclosed the November 9, 2013 transfer to the Trustee of the Pi Yun Su Trust. *Id.* ¶ 38. After Leechin moved Pi Yun to the Chicago area following a mental health episode, Pi Yun died on July 5, 2019. *Id.* ¶¶ 39–40. Leechin thereafter executed the stock certificate to Pi Yun and then to the Trustee of the Pi Yun Su Trust in order to gain control of 2/3 of the 60,000 outstanding Leadertech shares and therefore unchecked control over Leadertech, its profits, and the information evidencing her misconduct. *Id.* ¶ 41.

## IV.    Leechin's Sale of Leadertech Real Estate

Leadertech owned the land and building at 210 Mittel Drive in Wood Dale, Illinois (210 Mittel), where Leadertech is headquartered and runs its operations. FAC ¶ 42. By 2002, Leadertech owned 210 Mittel outright, which was its most substantial tangible asset. *Id.* ¶ 43. Leadertech paid the following in rent for 210 Mittel during the corresponding years:

        2009 - $12,155.00;
        2010 - $11,220.00;
        2011 - $8,415.00;
        2012 - $0.00;
        2013 - $0.00;
        2014 - $0.00.

*Id.* ¶ 44.

In February 2015, Leechin caused Leadertech to transfer the building to another entity, 210 Mittel Dr LLC, for $2,620,000.00. FAC ¶¶ 45, 48. Leechin is the sole manager and member of 210 Mittel Dr LLC. *Id.* ¶ 46. Leechin did not send notices to Leadertech shareholders or call any corporate meetings before the transfer, and the corporate book contains no resolution regarding the transfer. *Id.* ¶ 47. Leadertech's records suggest that the purchase price was used to repay or defray purported debts owed by Leadertech to Leechin. *Id.* ¶ 48.

Following Leadertech's transfer of 210 Mittel, Leadertech paid the following rent in the corresponding years:

2015 - $250,110.00;
2016 - $304,896.00;
2017 - $329,287.00;
2018 - $355,630.70.

FAC ¶ 49. The rent is being paid to an entity controlled by Leechin, 210 Mittel Dr LLC. *Id.* ¶ 50. Leechin has collected $1,239,924.70 in rent from Leadertech since acquiring 210 Mittel in February 2015. *Id.* ¶ 51.

## V. Leechin's Excessive Compensation and De Facto Dividends

Despite Leadertech making no shareholder distributions since 2012, Leechin has paid herself millions of dollars in compensation. FAC ¶ 52. Leadertech's tax returns reflect that between 2009 and 2018, officers were compensated yearly between $279,562.00 and $683,462.00. *Id.* ¶ 53 (totaling $3,813,207). All of that compensation was paid to Leechin or her children, who were listed as officers of Leadertech starting in 2013, but who do not work at Leadertech. *Id.* ¶ 54 (Leadertech employs no other officers).

Leechin did not disclose the self-interested compensation to Yung-Ting, who learned about it through later production. FAC ¶ 55. Despite the self-interested nature of the compensation and the bylaws' provision requiring board approval for officer compensation, Leadertech's records do not show any notices, minutes, or resolutions regarding Leechin's or any other officer's compensation. *Id.* Leechin has paid herself $3,539,207.00 in compensation over ten years at an average of $353,920.70 per year, in addition to the rent received by 210 Mittel Dr LLC from 2015 forward. *Id.* ¶ 56. Further, from 2013 through 2018, when Leadertech made no shareholder distributions, Leechin appears to have paid herself $1,526,359.00 as Leadertech's business was declining. *Id.* ¶ 57.

## VI.     LSI Server Solutions, Inc. & Leadertech Los Angeles, LLC

In the production obtained by Yung-Ting, certain Detail Income Statements show millions of dollars of entries for "LSI/LA" and "LSI/CHI," which continue into 2019. FAC ¶ 59. After investigating further, Yung-Ting identified two entities that Leechin controls that appear to be doing business with Leadertech. *Id.* ¶ 62. First, Leechin is the president, secretary, and sole shareholder of LSI Server Solutions, Inc., an Illinois Corporation, which is the entity appearing as "LSI/CHI" on Leadertech's income statements. *Id.* ¶¶ 63–64. Second, Leechin is the sole manager and member of Leadertech Los Angeles, LLC, a California limited liability company, which is the entity described as "LSI/LA" on Leadertech's income statements. *Id.* ¶ 65.

Yung-Ting found that Leadertech and Leadertech Los Angeles, LLC were both defendants in a civil matter filed in 2008 in Los Angeles County. FAC ¶ 67. Leechin

submitted a declaration in that matter admitting to diverting Leadertech accounts to Leadertech Los Angeles LLC and to paying it for "services." *Id.* Evidence and circumstances indicate that Leechin has moved so much business to Leadertech Los Angeles, LLC that Leadertech is suffering financial difficulties. *Id.* ¶ 69.

### VII. Leechin's Demand of Capital from Yung-Ting

On November 8, 2019, Yung-Ting received a Notice of Special Meeting of the Shareholders of Leadertech Systems of Chicago, Inc. FAC ¶ 70. This appears to be the first meeting Leadertech has ever called. *Id.* ¶ 71. The Notice was scheduled on December 3, 2019, stating that the "purpose of the Special Meeting is to discuss and then vote on a required collective shareholder capital contribution of $1,824,000, or, alternatively, the voluntary dissolution of the Corporation as promptly as possible." *Id.* ¶ 72.

The Notice of Special Meeting contains a "Budget – Cash Flow" indicating the following contributions:

a. "Shareholder Investment (Now)"
   1) Leechin Su: $448,000
   2) Pi-Yun Su Living Trust: $448,000
   3) Yung-Ting Su: $448,000
b. "Add'l Shareholder Loan → Capital Contribution (Now)"
   1) Leechin Su: $0.00
   2) Pi-Yun Su Living Trust: $0.00
   3) Yung-Ting Su: $448,000

FAC ¶ 73. The bylaws do not authorize Leadertech to demand that a shareholder make a loan to or invest in Leadertech. *Id.* ¶ 74. To the extent Leadertech is suffering financial difficulties, Leadertech's dealings with other entities Leechin controls is the cause. *Id.* ¶ 75. Leechin's purpose for calling the December 3, 2019 meeting appears

to have been to eliminate Yung-Ting as a minority shareholder without recompense prior to Yung-Ting taking action based on Leechin's looting of Leadertech. *Id.* ¶ 76.

## VIII.  California Cases and Settlement Agreement[3]

There were four related cases filed between 2013 and 2019 (California Cases) involving members of the Su family, and the parents' estates or trusts, which were filed before the present case and were proceeding in California state court when Leechin filed her first motion to dismiss in the present matter:

(1) *In re: Su, A-Yung*, BP 1397111 (A-Yung Estate Case). Filed in 2013, this case was the probate estate of A-Yung, seeking an accounting for the trust. Pi Yun allegedly filed an objection asserting that A-Yung's estate did not own any Leadertech stock after A-Yung gifted it to Pi Yun. First Mot. Dismiss at 6–7.

(2) *Estate of A-Yung Su v. Pi Yun Su and Leechin Su*, BC634213 (California Leadertech Case). Filed in 2016, this was a fraud case brought by A-Yung's estate seeking the return of the 20,000 shares that Leechin and Pi Yun allegedly pressured A-Yung into selling to Pi Yun on his death bed. First Mot. Dismiss at 6–7; Second Mot. Dismiss at 2–3 (complaint brought counts for fraud, conversion, breach of fiduciary duty, and other causes of action).

(3) *Pi Yun Su v. Li-Ying Su, et al.*, BC571816 (Taiwan Case or Chung Shin Case). Filed in 2016, this case involved allegations that A-Yung wrongfully transferred Pi Yun's holdings in a different company in Taiwan and gave some of their community property fund to Li-Ying, Yung-Ting, and Li-Jung. Second Mot. Dismiss at 2.

(4) *In re: A-Yung Su Living Trust Dated February 23, 2007*, 19STPB10423 (A-Yung Trust Case). Filed in 2019, this case sought a full accounting of all of the property, including non-cash assets and real property holding, in A-Yung's living trust. Second Mot. Dismiss at 7.

Pursuant to a status report submitted by the parties on July 26, 2022, the four consolidated California state court cases have settled. The California state court

---

[3]The following undisputed information regarding the California Cases was taken from Leechin's motions and the parties' briefs.

approved the settlement on October 1, 2021 and dismissed the cases with prejudice (California Settlement or Settlement Agreement). R. 138 at 1; *see* Second Mot. Dismiss at 8. The "California Settlement resolved the California probate action and established that" the disputed 20,000 shares of Leadertech "are owned by the Pi Yun Trust[.]" R. 138 at 2.

The Settlement Agreement also acknowledges the existence of this case, the Illinois Leadertech Case. R. 134, Second Resp. at 6; R. 120-5 at 7. While it lists the settled cases expressly, it does not list this case as one of the cases being settled. Instead, it provides that "[t]o the extent there are Claims that are currently pending or that could be brought against LEECHIN in the Illinois Leadertech Case," such claims are not released unless they were raised in the California Cases or are barred by *res judicata*, claim splitting, or collateral estoppel under California law. *Id.*; *see* R. 120-5 ¶ 18.

On November 25, 2019, Yung-Ting filed this lawsuit against Leechin asserting a claim of shareholder oppression. Yung-Ting subsequently amended her complaint, adding counts for breach of fiduciary duty and breach of contract. Leechin has filed motions to dismiss the FAC under Rule 12(b)(6) and Rule 12(b)(7).

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79. Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"Rule 12(b)(7) allows dismissal of an action where a litigant fails to join a party under Federal Rule of Civil Procedure 19. Fed. R. Civ. Pro. 12(b)(7). . . . In this procedural context, the court accepts all well-pleaded allegations from the complaint as true and draws all reasonable inferences in the plaintiff's favor." *Attorneys' Title Ins. Fund v. RSUI Indem. Co.*, 2015 WL 1505642, at *2 (S.D. Ind. Mar. 31, 2015) (citing *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 n. 2 (7th Cir. 2001)).

## Analysis

Before the Court are two motions to dismiss filed by Leechin. For purposes of this opinion[4], the first motion to dismiss argues that the FAC should be dismissed

---

[4]The parties' position is that the California Settlement "likely rendered moot one argument from the First Motion to Dismiss regarding the probate exception, while the other two grounds for dismissal remain ripe for consideration." R. 138 at 1–2 (the probate exception "need not be addressed following the California Settlement"). For this reason, the Court's analysis does not address the probate exception argument contained in the parties' briefing on the first motion to dismiss.

with prejudice for two independent reasons: (1) Yung-Ting has failed to allege lack of collusion pursuant to Federal Rule of Civil Procedure 23.1(b)(2), and (2) there are required absent parties that should be joined to the litigation pursuant to Federal Rule of Civil Procedure 12(b)(7) and 19, and their joinder destroys diversity jurisdiction. First Mot. Dismiss at 8–9. Leechin's second motion to dismiss argues that the FAC should be dismissed with prejudice based on the doctrines of *res judicata* (or claim preclusion), collateral estoppel (or issue preclusion), and claim splitting. Second Mot. Dismiss at 11–12. The Court addresses each motion and argument in turn.

### I. First Motion to Dismiss

#### a. Lack of Collusion

A complaint in a derivative action must "allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack[.]" Fed. R. Civ. P. 23.1(b)(2). The requirement was designed to prevent collusion in the establishment of diversity jurisdiction, preventing "the transfer of a minimal number of shares of stock for the purpose of creating diversity jurisdiction, the transferor retaining control of the lawsuit and being the real party in interest" and ensuring that a shareholder's derivative claim is not a strike suit. *Walden v. Elrod*, 72 F.R.D. 5, 13 (W.D. Okla. 1976); *see Messinger v. United Canso Oil & Gas Ltd.*, 80 F.R.D. 730, 738 (D. Conn. 1978). Leechin acknowledges that the words in a complaint need not exactly trace the language of the rule to suffice but argues that the FAC in no way alleges that Yung-Ting's action is not a collusive one, and so must be dismissed. R. 73-1, First

Memo. at 1–2 (citing *Messinger*, 80 F.R.D. at 738–39 and *Johnson v. Middleton*, 175 F.2d 535, 537 (7th Cir. 1949)).

In her response, Yung-Ting admits that the FAC does not explicitly state it is not collusive, but argues that the FAC pleads by inference that there has been no collusion in securing diversity jurisdiction, and that Leechin herself points to no collusion. R. 76, First Resp. at 1, 3. She insists that the United States Supreme Court has relaxed the pleading requirements of Rule 23.1 where the purpose of the Rule is not frustrated, and emphasizes that the facts here—where she has held 20,000 shares of Leadertech since 1992, makes numerous specific allegations of insider misconduct, and Leechin does not identify any facts indicating collusion—create an inference that Yung-Ting has not colluded to obtain jurisdiction. *Id.* at 4 (citing, among other cases, *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371 (1966) ("When the record of this case is reviewed in the light of the purpose of Rule 23(b)'s verification requirement, there emerges the plain, inescapable fact that this is not a strike suit or anything akin to it.")).

The Court finds that Leechin has the better of the argument. While neither Yung-Ting nor Leechin make any allegations tending to support an inference of collusion, the Federal Rule requires that plaintiffs allege a lack of collusion, and Yung-Ting has failed to do so here. The rule serves "a valid purpose" in pressuring plaintiffs to "tell the truth," and the Court here will not allow Yung-Ting to circumvent the explicit rule. *Walden*, 72 F.R.D. at 13. Yung-Ting cites *Messinger*, for the proposition that "where the derivative corporation is vigorously opposing

jurisdiction, the requirement of rule 23.1(2) should not be viewed semantically." *Messinger*, 80 F.R.D. at 739. However, in *Messinger*, the plaintiff alleged that the suit was "not brought exclusively to confer jurisdiction upon this Court." *Id.* at 738. No such allegation is present in the FAC. However, Yung-Ting also requests leave to amend her pleading to include a statement that the action is not a collusive one to confer jurisdiction. That request is granted, and the Court grants Yung-Ting leave to file an amended complaint, adding *only* an allegation that the suit is not collusive pursuant to Rule 23.1. *See Walden*, 72 F.R.D. at 13.

### b. Joinder of Required Parties

Leechin next argues that the FAC must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7) and 19 because Yung-Ting failed to join necessary and indispensable parties whose joinder is not feasible because it would destroy the Court's diversity jurisdiction. Specifically, she points to the absence of all the other directors and officers of Leadertech, A-Yung and Pi Yun's trusts and estates, and the beneficiaries of the trusts and estates. First Memo. at 8–9; *see* Fed. R. Civ. P. 12(b)(7) (a party by motion may assert defense of "failure to join a party under Rule 19").

Rule 19 "mandates that district courts join certain absent parties to a present action, and allows the court to dismiss the action if such parties cannot be joined and if proceeding without those parties is inequitable." *Aguinaga v. UBS AG*, 2010 WL 5093433, at *5 (S.D.N.Y. Dec. 14, 2010). The rule "sets forth 'a two-step[5] inquiry for

---

[5]"Prior to December 1, 2007, the two-step Rule 19 inquiry asked first whether a party was 'necessary' and second whether that party was 'indispensable,' and thus whether its non-

determining when it is proper to dismiss an action for inability to obtain jurisdiction over an individual with an interest in the litigation.' . . . If a court determines that an absent person satisfies the Rule 19(a) criteria, he must be joined if his joinder is feasible. Only if joinder is not possible—i.e., the court lacks personal jurisdiction over him or joining him would destroy the court's subject matter jurisdiction—does Rule 19(b) come into play." *Burger King Corp. v. Am. Nat. Bank & Tr. Co. of Chicago*, 119 F.R.D. 672, 674–75 (N.D. Ill. 1988) (internal citations omitted).

Federal Rule of Civil Procedure 19(a) establishes the criteria for required parties—those persons who should be joined as parties to the action.

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) . . . impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). "If a person has not been joined as required, the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2).

Rule 19(b) explains the Court's task when joinder of a required party is not feasible.

---

joinder required the court to dismiss the case. The change to the current determinations of first whether a party is 'required' and second whether the court must dismiss the action if joinder is not feasible were 'intended to be stylistic only.' Fed. R. Civ. P. 19 2007 amend. The Second Circuit has stated, moreover, that '[t]here is no substantive difference between the present rule and the rule . . . prior to the 2007 amendment.'" *Aguinaga*, 2010 WL 5093433, at n.5 (S.D.N.Y. Dec. 14, 2010) (citing *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009)).

> If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

### i. Required Parties under Rule 19(a)

The Court first addresses whether any absent persons are required parties under Rule 19(a). *See Askew v. Sheriff of Cook Cnty., Ill.*, 568 F.3d 632, 635 (7th Cir. 2009) ("The first step . . . is to identify which parties (if any) fall within the scope of the rule."); *Aguinaga*, 2010 WL 5093433 at *5 ("First the court determines whether the absent party is 'required' under Rule 19(a)(1). . . . If a 'required' party cannot be joined, the court must consider 'whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed' under Rule 19(b).").

Leechin argues that the unnamed officers and directors—at minimum, Mai-Lin—are required parties under Rule 19(a), citing numerous cases. First Memo. at 10 (citing *Tower Hill Connellsville Coke Co. of W. Virginia v. Piedmont Coal Co.*, 33 F.2d 703, 706 (4th Cir. 1929) (If the court below "seeks to direct or in any way to control the [company's] management . . . its officers and directors would be necessary and indispensable parties" such that if the court attempts to direct "the payment of any specific dividends," that "would be an effort to control the management of that

company, and could not be done without making its officers and directors parties."); *Duman v. Crown Zellerbach Corp.*, 107 F.R.D. 761, 763 (N.D. Ill. 1985) ("In a suit by shareholders alleging injury to themselves and the corporation by an action of the corporation's board, several courts have found that a director 'claims an interest relating to the subject of the action,' and should be joined, if possible.") (quoting Rule 19(a)); *Gottlieb v. Vaicek*, 69 F.R.D. 672, 673, 680–81 (N.D. Ill. 1975), *aff'd*, 544 F.2d 523 (7th Cir. 1976) (dismissing the action after finding third limited partner, who had filed an "almost identical complaint" in a different court against the same defendant, was an indispensable party to the instant action brought by the two other limited partners)). Leechin argues that Leadertech's directors and officers are required because (1) the FAC alleges that Leechin acted without board approval and breached the bylaws, and (2) Yung-Ting seeks relief that would direct or control the management of Leadertech, including the appointment of a receiver and a provisional board of directors. First Memo. at 11 (contending a disposition without the current directors and officers would impair and impede their ability to protect—and may terminate entirely—their interest).

Yung-Ting retorts that "federal courts are reluctant to dismiss for failure to join where doing so deprives the plaintiff of his choice of federal forum," *Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001), asserting that there is no general rule that all directors and officers of a corporation are required parties in a shareholder action regarding the corporation. First Resp. at 11 (citing *Castner v. First Nat'l Bank of Anchorage*, 278 F.2d 376, 384 (9th Cir. 1960) ("Directors

are generally not necessary or indispensable parties to an action by or on behalf of the corporation they control. . . . They are of course indispensable where they themselves are charged with fraudulent or improper conduct.") (internal citations omitted) and *Dowd v. Front Range Mines, Inc.*, 242 F. Supp. 591, 597 (D. Colo. 1965) ("[D]irectors are not indispensable parties in actions of this nature, unless they themselves are wrongdoers and relief is sought [against them].")).

Yung-Ting further argues that the absent persons are neither required under Rule 19(a)(1)(A) nor 19(a)(1)(B). First, under Rule 19(a)(1)(A), a party must be joined if the "court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). "The term complete relief refers only 'to relief between the persons already parties, and not as between a party and the absent person whose joinder is sought.'" *Perrian v. O'Grady*, 958 F.2d 192, 196 (7th Cir. 1992) (citation omitted); *see Varlen Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2011 WL 3664796, at *4 (N.D. Ill. Aug. 17, 2011) ("Rule 19(a)(1)(A) is designed to protect the interests of those parties [to the litigation] only."). "The only persons who are necessary parties under Rule 19(a)(1) are 'those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court.'" *Leigh v. Engle*, 1986 WL 892, at *2 (N.D. Ill. Jan. 8, 1986) (quoting Fed. R. Civ. P. 19(a)(1) advisory committee note). Yung-Ting emphasizes that she alleges corporate mismanagement against only Leechin, and not against any other officers, directors, trusts, or beneficiaries, so complete relief as to Yung-Ting is possible by the resolution of the pending claims in this case without joinder of any other party.

Regarding Rule 19(a)(1)(A), the Court agrees with Yung-Ting that complete relief can be afforded between Leechin and Yung-Ting. Leechin does not explain why complete relief would not be possible as between her and Yung-Ting. Without joining any other party, the Court can find in favor of Yung-Ting and award damages and the other relief she requests. Leechin points out that Yung-Ting seeks the appointment of a receiver and provisional board of directors, contending that by arguing that Yung-Ting only makes claims against Leechin, Yung-Ting "completely ignores corporate structure and governance[.]" R. 77, First Reply at 7 ("Thus, at a minimum, this case cannot proceed without Mai-Lin, who was a director and officer of Leadertech at all relevant times and who is a California citizen."). True, were the Court to afford such relief, it would affect non-party directors, and others, including Mai-Lin. But the fact that such relief would affect non-parties does not preclude complete relief between the current parties. *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006) (upholding the district court's denial of an absent party's motion to dismiss pursuant to Rule 19, even where there was "no question that further litigation between [the absent party and the defendant was] . . . inevitable" if the plaintiff prevailed, because "Rule 19(a)(1) is concerned only with those who are already parties" and the plaintiff could "obtain complete relief" as to the defendant without the absent person's presence in the case). In addition, on this point regarding 19(a)(1)(A), Leechin only cites to *Tower Hill*—a non-binding, Fourth Circuit case from 1929—and *Duman*, which does not hold that a company's entire board of directors must be named in a suit for a court to provide the sort of relief

requested by Yung-Ting. First Reply at 7; *see Duman*, 107 F.R.D. at 763 (noting that where shareholders allege a board's actions have harmed them and the corporation, several courts have found a director claims an interest relating to the subject of the action *under Rule 19(a)(1)(B)*, before analyzing 19(b) and finding joinder is not required). Ultimately, Leechin does not explain how the Court would be prevented from affording complete relief among the present parties, despite the absence of Mai-Lin and the other parties she insists are required.

Second, under Rule 19(a)(1)(B), a "person may also be considered a required party if 'that person claims an interest relating to the subject of the action' and that interest will either be endangered by going forward in her absence or else will threaten to whipsaw an existing party with inconsistent obligations." *J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 653 (7th Cir. 2014) (quoting Fed. R. Civ. P. 19(a)(1)(B)). Yung-Ting asserts that the absent persons have not claimed an interest relating to the subject matter of the action. First Resp. at 13 (citing *J.P. Morgan*, 760 F.3d at 652 (employees were not required parties because their interest was "identical" to the plaintiffs in ending the arbitration, and "[t]his interest will therefore be protected whether or not the individual employees are parties to this suit."); *Varlen*, 2011 WL 3664796 at *5 ("Though the non-party need not actively intervene in the present litigation, it must at least manifest some legal claim in the subject matter of the action.") (quoting *Aguinaga v. UBS AG,* 2010 WL 5093433, at *10 (S.D.N.Y. Dec. 14, 2010) (compiling cases)); *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 49 (2d Cir. 1996) ("It is the absent party that must 'claim an interest.'");

*Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.,* 723 F.Supp.2d 676, 692 (D. Del. 2010) ("[W]here there is no showing that the absent party actually has claimed an interest relating to the subject of the action, the court may deny a motion to dismiss.")).

The Court agrees with Yung-Ting regarding subsection 19(a)(1)(B) as well. Leechin has provided no evidence that the absent persons have claimed an interest in this litigation. *See Quinn v. Fishkin*, 117 F. Supp. 3d 134, 144 (D. Conn. 2015). Leechin insists that the absent persons have claimed an interest, as evinced by the fact that the instant litigation was stayed pending a Mandatory Settlement Conference in California, wherein Yung-Ting, Leechin, and all beneficiaries of the estates and trusts of A-Yung and Pi Yun stated that they were interested in a global settlement of all claims pending between and among them. First Reply at 8 (asserting that the "only party who did not actually participate in that Mandatory Settlement conference was Yung-Ting as an Illinois plaintiff and her Illinois counsel."); *see* FAC ¶ 34 ("A probate matter was opened regarding A-Yung's estate in Los Angeles Superior Court" in 2013 and "there have since been several claims" between A-Yung's estate, Pi Yun's estate, and Leechin which are pending.). The Court's stay of this case, however, was lifted on March 16, 2021 after the settlement conference in California did not resolve this case. And no party has since come forward, intervened, or otherwise manifested some legal claim in this litigation, despite that the Settlement Agreement specifically identified this lawsuit. *See United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) (holding that district court did not err in finding absent party

unnecessary when the absent party had notice of the litigation but nonetheless chose not to claim an interest). Unlike in *Davidson Well Drilling, Ltd. v. Bristol-Myers Squibb Co.*, for example, where the court dismissed the case after finding that a non-party was required under Rule 19(a)(1)(B), the Court is not aware of any absent party that brought its own claims based on the same claims or "same contract at issue" in this litigation. 2009 WL 2135396, at *2, *5–6 (S.D.N.Y. July 16, 2009).

Because the Court finds that no absent party is required under Rule 19(a), an analysis under Rule 19(b) is unnecessary, and Leechin's motion to dismiss is denied as to joinder.

### ii. Rule 19(b) Analysis

However, even if the Court were to find that third-parties like Mai-Lin were required parties, the Court would still find that in equity and good conscience, the action should proceed among the existing parties pursuant to Rule 19(b). Because Mai-Lin and other alleged required parties are domiciled in California, like Yung-Ting, their joinder would destroy diversity jurisdiction, requiring a Rule 19(b) analysis. To reiterate, the Court must consider four factors in analyzing whether the case should nevertheless proceed without the required parties or be dismissed: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action

24

were dismissed for nonjoinder. "The Supreme Court . . . interpreted those considerations as requiring a balancing of four interests: the plaintiff's interest in the availability of a forum; the defendant's interest in avoiding multiple or inconsistent adjudication; the nonparties' interest in preventing prejudice to their claims; and the public's interest in efficient dispute settlement." *Hansen v. Peoples Bank of Bloomington*, 594 F.2d 1149, 1151 (7th Cir. 1979) ("The rule also mandates that the court consider the possibility of shaping relief to protect the interests of absent persons as an alternative to dismissing the action."); *see also Duman*, 107 F.R.D. at 763 ("Usually, applying those factors to a suit against a corporation yields a determination that directors are not indispensable. . . . The result does not change significantly when the action lies between shareholders and their corporation.").

As to the first two factors, Leechin argues that a judgment in Mai-Lin's absence would prejudice Mai-Lin because she was always an officer or director, and the appointment of a receiver or new board of directors would have a prejudicial impact which the Court could not avoid. First Memo. at 12 (citing *Gottlieb*, 69 F.R.D. at 680 ("[The absent party's] asserted rights in the California suit would be adjudicated away without her participation by a determination of the instant case.")). Regarding the adequacy of a judgment in Mai-Lin's absence, Leechin argues that the ownership of 20,000 shares are at issue in the California Cases[6] and the entire controversy might be resolved in one of those proceedings. First Memo. at 12. Last, she insists that Yung-Ting has a remedy outside of Illinois federal court, including in California or Illinois

---

[6]The ownership of the 20,000 shares has now been resolved in California. They are owned by the Pi Yun Su Trust.

state court. *Id.* at 12–13. Leechin also insists that her parents' trusts and their beneficiaries are required parties, and would destroy diversity as citizens of California. *Id.* at 13–14 (arguing that "the rights asserted on behalf of Pi Yun in California would be adjudicated away by a determination in the instant case" and citing *Hansen*, 594 F.2d at 1151–54).

Yung-Ting argues that her claims are against Leechin only—not any other director, officer, trust, or beneficiary—and other directors and officers are not liable for Leechin's wrongs. Therefore, she insists, a judgment here will not prejudice any absent parties. First Resp. at 14 (citing *Castner*, 278 F.2d at 384 and contending "this is not a trusts and estates case"). She emphasizes that the Court will have the flexibility to fashion a mitigating remedy if any absent party may be prejudiced, and contends that the judgment here will be entirely adequate, as her case proceeds only against Leechin. First Resp. at 14–15 ("Upon judgment against Leechin, Yung-Ting has no other parties to pursue her claims against. Leechin is the only person or entity Yung-Ting alleges committed any wrong[.]").

The Court finds that this case could proceed in equity and good conscience, even if the alleged required parties were required and joinder was not feasible. The Court will address each 19(b) factor in turn. (1) Prejudice: Even if the directors, trusts, and beneficiaries were required parties, the California Cases have been resolved, and there are no longer other lawsuits being litigated concurrently with the present matter. There is therefore no risk of multiple or inconsistent adjudications, and Leechin's arguments regarding the allegedly parallel California Cases are moot.

*See* First Reply at 9. And while the trusts may own Leadertech shares, no rights of theirs would be adjudicated away by a judgment in this case. (2) Mitigation of Prejudice: Importantly, while Yung-Ting requests certain relief that would alter the management of Leadertech, she also requests relief including damages and disgorgement of funds. *See Duman*, 107 F.R.D. at 764 (denying motion to dismiss and noting that breach of fiduciary duty claims "did not make it impossible to fashion an adequate remedy in the absence of the directors, nor did it make them indispensable parties."). Pursuant to Illinois law, the Court can shape the relief here such that Leadertech directors and officers' role in Leadertech would not be affected. *See* 805 ILCS 5/12.56(c) ("The remedies set forth in subsection (b) shall not be exclusive of other legal and equitable remedies which the court may impose."). (3) Adequacy of Judgment: A judgment in this case absent any required parties could adequately compensate Yung-Ting. (4) Adequate Remedy Upon Dismissal: Yung-Ting could certainly proceed in another forum, but she has chosen to proceed in this Court. Together with the other factors already discussed, the fact that Yung-Ting would have an adequate remedy in another Court does not justify dismissal of this case. *See Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 501 (7th Cir. 1980) (availability of an alternative remedy, standing alone, is not sufficient for dismissal, and some additional interest of the absent person must be found to outweigh the plaintiff's choice of forum). For this additional reason, Leechin's first motion to dismiss is denied as to joinder.

## II.    Second Motion to Dismiss

In her second motion to dismiss, Leechin asserts that the FAC should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Second Mot. Dismiss at 1. Specifically, she argues that the doctrines of claim preclusion, issue preclusion, and claim splitting warrant dismissal based upon the California Cases, Settlement Agreement, and subsequent dismissal of those cases with prejudice. Because a California state court rendered judgment in those cases, the Court applies California preclusion law. *Robbins v. MED-1 Sols., LLC*, 13 F.4th 652, 656 (7th Cir. 2021) ("The Full Faith and Credit Act requires the Court to 'apply the preclusion law of the state that rendered the judgment to determine whether *res judicata* controls this case.'") (quoting *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007)); *see* 28 U.S.C. § 1738.

The Court addresses each of Leechin's arguments in turn. However, the Court does not independently analyze the claim splitting argument, because, as Leechin admits, "[u]nder California law, the rule against splitting a cause of action is not independent of the doctrine of res judicata . . . the rule against splitting a cause of action incorporates the bar rule of claim preclusion." *Boyd v. Freeman*, 18 Cal. App. 5th 847, 858 (2017); *see* R. 121, Second Memo. at 11.

### a.  Res Judicata (or Claim Preclusion)

"As generally understood, '[t]he doctrine of *res judicata* gives certain conclusive effect to a former judgment in subsequent litigation involving the same controversy.' . . . The doctrine 'has a double aspect.' . . . 'In its primary aspect,' commonly known as

28

claim preclusion, it 'operates as a bar to the maintenance of a second suit between the same parties on the same cause of action. . . . 'In its secondary aspect,' commonly known as collateral estoppel, '[t]he prior judgment' . . . 'operates' in 'a second suit . . . based on a different cause of action . . . 'as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action.' . . . 'The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding.'" *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 797 (2010) (quoting *People v. Barragan*, 32 Cal. 4th 236, 252–253 (2004)).

"Although *res judicata* is an affirmative defense typically raised in an answer, where an affirmative defense is disclosed in the complaint, it provides a proper basis for a Rule 12(b)(6) motion." *Carter v. J.P. Morgan Chase Bank*, 2017 WL 1304117, at *2 (N.D. Ill. Apr. 7, 2017), *aff'd sub nom. Carter v. JPMorgan Chase Bank, N.A.*, 693 F. App'x 461 (7th Cir. 2017) (citing *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008)). In addition, the Court "may take judicial notice of matters in public record, including court documents, in deciding a motion to dismiss without converting it to a

motion for summary judgment." *Carter*, 2017 WL 1304117 at *2 (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)).

### i.    Affirmative Defense on 12(b)(6)

As an initial matter, Yung-Ting argues in her response that Leechin cannot invoke her preclusion arguments at this stage because such arguments are affirmative defenses which do not appear on the face of the FAC. Second Resp. at 7 (citing *Sledge v. Bellwood Sch. Dist. 88*, 487 F. App'x 313, 314 (7th Cir. 2012) (claim preclusion appropriately raised on 12(b)(6) when the "complaint cited [the plaintiff's] prior state-court action regarding his employment dispute, and [the defendant] attached to its motion to dismiss a copy of [the plaintiff's] prior state-court complaint and the dismissal order-documents of which the district court was entitled to take judicial notice."). True, the FAC makes no mention of the Settlement Agreement or the court order approving the agreement and dismissing the California Cases. In her reply, Leechin responds that the FAC states that there were "several claims between A-Yung's estate [ ], Pi Yun [ ], and Leechin," which the FAC calls the "California Litigation." R. 135, Second Reply at 2 (quoting FAC ¶ 34 (discussing the A-Yung estate probate matter)); *see* FAC ¶ 38 (discussing Leechin's disclosure of the transfer of Leadertech shares in a "filing in the California Litigation regarding A-Yung's estate."). Leechin insists that the Court can also take judicial notice of the Settlement Agreement and orders dismissing the California Cases with prejudice. Second Reply at 2 (citing *Carter*, 2017 WL 1304117 at *2). The Court agrees with Leechin that Yung-Ting's discussion of the California Litigation, while not comprehensive,

30

sufficiently disclosed the prior cases such that Leechin can bring her affirmative defense of claim preclusion in the present motion to dismiss.

### ii.    First Element – Identical Claims

Turning to the merits of the motion, Leechin first argues that the first element of claim preclusion—that the pertinent lawsuits involve identical claims—is satisfied because the primary rights and duties in both the California Leadertech Case[7] and the present case are the same. Second Memo. at 6. To determine whether the past and present proceedings involve identical causes of action, the Court will apply the primary rights theory, under which a cause of action arises out of (i) an antecedent primary right, (ii) a corresponding duty, and (iii) defendant's alleged breach of that duty. *Boeken*, 48 Cal. 4th at 797 (the combination of the primary right, duty, and wrong constitutes the "cause of action" in the legal sense of the term; put another way, the cause of action "is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory . . . advanced"). As further explained by the California Supreme Court:

> Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different legal ground for relief. Thus, under the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek

---

[7]*Estate of A-Yung Su v. Pi Yun Su and Leechin Su*, BC634213 (California Leadertech Case), was a fraud case brought by A-Yung's estate seeking the return of the 20,000 shares that Leechin and Pi Yun allegedly pressured A-Yung into selling to Pi Yun on his death bed. First Mot. Dismiss at 6–7.

compensation for the same harm, they generally involve the same primary right.

*Id.* (internal quotation marks and citations omitted). Also, "*[r]es judicata* bars not only issues that were raised in the prior suit but related issues that could have been raised." *Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 569 (2010) (affirming summary judgment pursuant to claim preclusion, finding that a "court-approved settlement in a prior suit precludes subsequent litigation on the same cause of action," because the plaintiff was attempting "a second time to recover civil penalties for alleged Labor Code violations" but "could have sought to expand the scope of the prior [class] action to include his additional penalty claims" or "opted out of the class").

Leechin asserts that the California Leadertech Case precludes Yung-Ting's claims here, and Yung-Ting is trying to "reap[ ] the benefits of the settlement in the prior action" while trying to obtain redress for those same harms in this case. *Villacres*, 189 Cal. App. 4th at 569; *see* Second Memo. at 4–5. Leechin characterizes that previous case as involving allegations of self-dealing, oppression, breach of fiduciary duty, and violations of Illinois corporate laws against Leechin. Second Memo at 4–5 (quoting the California Leadertech Case's first amended complaint while arguing that the primary rights from that case were the rights to (1) not be oppressed, defrauded, deceived, and taken advantage of, (2) not have Leechin engage in self-dealing, and (3) have the company managed in accordance with law). She further describes the corresponding duties from that case as Leechin's duties to not: engage in shareholder oppression, breach fiduciary duties, commit fraud, self-deal,

deceive, withhold information, mismanage the company, and violate Illinois corporate laws. *Id.* at 5. Leechin argues that the present case involves the same primary rights and duties, as Yung-Ting's allegations "focus on Leechin's oppression, illegal conduct, and misappropriation of Leadertech's funds, [her] self-dealing, and [her] breaches of fiduciary duties." *Id.* at 5–6 ("Plaintiff instituted this action based on the same injuries to the same rights that she had brought in the California Leadertech Case[.]"); *id.* at 6 (citing *Atwell v. City of Rohnert Park*, 27 Cal. App. 5th 692, 698 (2018), *as modified* (Sept. 26, 2018) ("Res judicata not only bars issues actually litigated but also bars issues that *could have been* litigated, as long as the later-raised issues constitute the same cause of action involved in the prior proceeding.")); *see* Second Reply at 8–9 ("Just because Plaintiff's Illinois complaint has more detailed allegations to support the same derivative claims that her father's estate brought in California does not mean that the primary rights are 'different.'").

Yung-Ting counters that none of the California Cases involved the same claims as this case, or adjudicated Yung-Ting's rights as a shareholder in Leadertech. Second Resp. at 1. She emphasizes that "[u]nless the issue or cause of action in the two actions is identical, the first judgment does not stand as a bar to the second suit." *Consumer Advoc. Grp., Inc. v. ExxonMobil Corp.*, 168 Cal. App. 4th 675, 686 (2008). In contrast to Leechin, Yung-Ting characterizes the California Leadertech Case as follows: the primary right was A-Yung's right against having his property taken from him without consent or notice; the defendants' duty was to not subvert A-Yung's estate and succession plan; and the injury was that A-Yung's property was unlawfully

33

taken. Second Resp. at 9. And, as distinct from that case, the primary rights here were to have Leadertech managed for the benefit of the shareholders. Second Resp. at 10 (arguing that the fiduciary duties in the cases were different, as one stemmed from a purported gift between A-Yung and Pi Yun, and the other stemmed from mismanagement of Leadertech).

The Court agrees with Yung-Ting that the previous cases and this case do not involve identical claims. The California Cases involved, respectively, (a) the probate estate of A-Yung, seeking an accounting for the trust, (b) an alleged wrongful transfer of holdings in a different company in Taiwan, and (c) a full accounting of A-Yung's living trust. None of those cases involve the same claims as here, where Yung-Ting alleges corporate malfeasance by Leechin through the formation of self-dealing entities and various deceptive transfers and payments. Even the fourth case—the California Leadertech Case, on which Leechin primarily relies—focused entirely on Leechin and Pi Yun's alleged scheme to fraudulently transfer A-Yung's 20,000 Leadertech shares to Pi Yun as A-Yung was dying. *See* Second Mot. Dismiss at 3–6 (detailing allegations from the California Leadertech Case). This case, on the other hand, involves numerous other allegations of misconduct against Leechin directly affecting the shareholders of Leadertech, including Leechin's transferring of real property as a means of self-dealing, paying rent to an entity Leechin owns, compensating herself excessively, creating undisclosed entities to which Leechin transferred Leadertech's business, and demanding that Yung-Ting give Leadertech money or face its dissolution. The cases therefore represent different primary rights,

duties, and injuries, even though both cases involve claims of oppression, self-dealing, and breach of fiduciary duty. Because the injuries were not overlapping, and therefore the claims are not identical, the Court finds that claim preclusion does not bar the present action. The second motion to dismiss is denied.

### iii.    Third Element[8] – Parties in Privity

The Court's finding that the California Cases and the present case do not involve identical claims defeats Leechin's claim preclusion argument. Still, for the sake of completeness, the Court addresses the parties' arguments regarding the third element—whether Yung-Ting was a party or in privity with a party to the California Settlement. Leechin does not argue that Yung-Ting was actually a party to the California Leadertech Case, instead arguing that she was in privity with the those parties.[9]

---

[8]Regarding the second element—whether the previous lawsuit constituted a final judgment on the merits—Leechin argues that the California Settlement and the dismissal of the California Cases with prejudice was a final judgment on the merits. Yung-Ting does not contest the argument, and therefore concedes the point. *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007).

[9]In her reply, Leechin insists that Yung-Ting was actually a party to the California Cases because she was a defendant in the Chung Shin Case, was appointed co-executor in the A-Yung estate case, defended against Leechin's claims in the A-Yung trust case as a successor trustee, and signed the Settlement Agreement individually and in her fiduciary capacities as an heir, legatee, and beneficiary. Second Reply at 2–3. But Leechin did not make that argument until her reply brief, originally arguing only that Yung-Ting was in privity with parties in the California Cases. *See* Second Memo. at 8–9 ("If Plaintiff was not a party to the California Leadertech Case, Plaintiff was most certainly in privity. . . . Because . . . Plaintiff was in privity with the plaintiff in the California Leadertech Case, Plaintiff's claims are barred . . ." The argument is therefore waived. *See Perdue v. RBC Mortg. Co.*, 156 F. App'x 824, 826 (7th Cir. 2005) ("[Plaintiff] waived her unconscionability argument by failing to raise it until her reply brief.").

"The concept of privity . . . refers 'to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights[.]'" *Atwell v. City of Rohnert Park*, 27 Cal. App. 5th 692, 702, *as modified* (Sept. 26, 2018) (citation omitted) (noting that courts have expanded the concept of privity to maintain the stability of judgments, insure expeditious trials, prevent vexatious litigation, and serve the ends of justice). As the California Court of Appeal has explained, quoting the California Supreme Court:

> "As applied to questions of preclusion, privity requires the sharing of an identity or community of interest, with adequate representation of that interest in the first suit, and circumstances such that the nonparty should reasonably have expected to be bound by the first suit. A nonparty alleged to be in privity must have an interest so similar to the party's interest that the party acted as the nonparty's virtual representative in the first action." Thus, for purposes of privity, the emphasis is not on a concept of identity of parties, but on the practical situation. The question is whether the non-party is sufficiently close to the original case to afford application of the principle of preclusion.

*Castillo v. Glenair, Inc.*, 23 Cal. App. 5th 262, 277 (2018), *as modified on denial of reh'g* (May 14, 2018) (quoting *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 826 (2015)) (other internal quotations and citations omitted); *see Atwell*, 27 Cal. App. 5th at 703 ("Put another way, privity, as used in the context of res judicata or collateral estoppel, does not embrace relationships between persons or entities, but rather it deals with a person's relationship to the subject matter of the litigation.").

Applying that standard, Leechin contends that Yung-Ting was a party in privity with a party to the California Leadertech Case. Second Memo. at 8. She alleges that Yung-Ting was a co-executor of A-Yung's estate and successor co-trustee

under his trust, and executed the Settlement Agreement in those capacities and as an heir and beneficiary. *Id.* She also asserts that the two pertinent cases share an identity or community of interest, and Yung-Ting should have expected to be bound by the resolution of the California Leadertech Case because their other sister took over as executor of A-Yung's estate. *Id.* at 8–9.

Predictably, Yung-Ting disagrees, arguing first that the community of interest requirement for privity is not met because the California Leadertech Case was brought by a personal representative and not Yung-Ting. Second Resp. at 11. She further argues that there is no community of interest between her and the California Leadertech Case parties as co-shareholders of Leadertech. *Id.* (citing *Dillard v. McKnight*, 34 Cal. 2d 209, 214 (1949) (generally a business partner is not in privity with regard to previous tort actions brought against another partner even when the same issues are raised in later litigation)).

Next, Yung-Ting asserts that her shareholder interests were not adequately represented in the California Leadertech Case because: (1) she did not learn of the actionable conduct she alleges here until years after that case's filing, when Leadertech produced documents pursuant to Yung-Ting's statutory demand, *see Allied Fire Prot. v. Diede Constr., Inc.*, 127 Cal. App. 4th 150, 155–56 (2005) (noting that what "could have been litigated" is determined "as of the date the first complaint is filed," and discerning "no principled basis for distinguishing between a new fact and a newly discovered fact[.]"), and (2) she could not have brought her Illinois statutory shareholder oppression action in the California Leadertech Case, because

37

the IBCA requires that shareholder oppression claims be brought locally, *see* 805 ILCS 5/12.60(a) ("Every action under [the pertinent sections] shall be commenced in the circuit court of the county in which either the registered office or principal office of the corporation is located."). Second Resp. at 12 (in addition, California law prevented A-Yung's estate from bringing actions on behalf of individual heirs like Yung-Ting pursuant to Cal. Prob. Code § 9820 (2021)); *see Koch v. Hankins*, 223 Cal. App. 3d 1599, 1605 (1990) (if "the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground . . . then a second action in a competent court presenting the omitted theory or ground should be held not precluded.").

Lastly, Yung-Ting contends that there was no reason for her to expect for the California Settlement to affect this case, as the agreement explicitly stated that any pending claims against Leechin were not released unless raised in the California Cases or barred by preclusion. Second Resp. at 13. In reply, Leechin argues that *Allied Fire* actually supports her argument because Yung-Ting could have brought these claims earlier if she had been diligent, and the court in *Allied Fire* explained that the "reason for the rule that all claims that 'could have been brought' are barred under res judicata is so a party cannot by negligence or design withhold issues and litigate them in consecutive actions." *Allied Fire*, 127 Cal. App. 4th at 156; Second Reply at 6–7 (arguing also that *Koch* is inapplicable because it addresses a federal court's refusal to exercise pendent jurisdiction over state law claims").

The Court again agrees with Yung-Ting. Privity is absent here because the parties—Yung-Ting and the estate of A-Yung—did not share an identity or community of interest. There is no indication that A-Yung's estate knew of Yung-Ting's shareholder claims under the IBCA regarding Leechin's alleged mismanagement of Leadertech when it filed the California Leadertech Case, and regardless, Illinois and California statutes explicitly foreclosed bringing such claims in California. *See Koch*, 223 Cal. App. 3d at 1605. The Court cannot find that A-Yung's estate had an interest so similar to Yung-Ting's in bringing that case about the 20,000 Leadertech shares that it acted as Yung-Ting's virtual representative in the first action, *Castillo*, 23 Cal. App. 5th at 277, nor that Yung-Ting's relationship to the fraudulent transfer claims in that case were such that her claims here should be precluded, *Atwell*, 27 Cal. App. 5th at 703. Further, Leechin compares this case to *Atwell*, where privity was found despite that the future plaintiffs were not affiliated with the later plaintiffs and did not coordinate with them. Second Memo at 8. But *Atwell* is distinguishable. There, both sets of plaintiffs alleged claims as citizens, taxpayers, property owners, and electors of Rohnert Park, and the future plaintiffs failed "to distinguish this harm from that alleged in the [previous] action." *Atwell*, 27 Cal. App. 5th 692, 703 (2018). In contrast, as discussed *supra*, the relevant plaintiffs here have asserted different harms in their respective matters.

For the additional reason that Yung-Ting was not in privity to a party in the California Cases, Leechin's claim preclusion argument fails, and the second motion to dismiss is denied.[10]

### b. Collateral Estoppel (or Issue Preclusion)

Leechin also argues that collateral estoppel, or issue preclusion, applies and bars this case.

> Issue preclusion . . . prevents relitigation of previously decided issues, rather than causes of action as a whole. It applies only (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party. Courts have understood the "necessarily decided" prong to require only that the issue not have been "entirely unnecessary" to the judgment in the initial proceeding—leaving room for a decision based on two grounds to be preclusive as to both.

*Samara v. Matar*, 5 Cal. 5th 322, 327 (2018) (internal quotations and citations omitted); *see Alpha Mech., Heating & Air Conditioning, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 133 Cal. App. 4th 1319, 1333 (2005) (The doctrine "is not mechanically applied, and in each case the court must determine whether its application will advance the public policies which underlie the doctrine. Those policies are (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3)

---

[10]For the reasons that the present case is not barred by the doctrine of claim preclusion, it is also not barred by the doctrine of claim splitting, because the rule against splitting a cause of action is not independent of claim preclusion. *Boyd v. Freeman*, 18 *Cal.* App. 5th 847, 858 (2017).

to provide repose by preventing a person from being harassed by vexatious litigation.") (internal quotations and citations omitted).

Leechin insists that the four elements of issue preclusion are met here. She contends that the Settlement Agreement and dismissals with prejudice constituted final adjudications of identical issues that were actually litigated and decided. Second Memo. at 10 (citing *Alpha Mech.*, 133 Cal. App. 4th at 1333 (applying issue preclusion because cross-plaintiff "had a full and fair opportunity to litigate its cross-complaint, but instead elected to enter into the settlement agreement and receive [damages] in exchange for dismissing its cross-complaint with prejudice.")). And, like in her claim preclusion argument, she asserts that Yung-Ting was in privity with the parties in the California Leadertech Case. *Id.* (citing *Atwell*). She further posits that public policy would be served by applying issue preclusion here, because it would minimize repetitive litigation before courts in two jurisdictions and prevent Leechin from being harassed by vexatious litigation. *Id.*

Yung-Ting attacks Leechin's arguments by pointing out that Leechin fails to identify a single issue that was actually litigated against Yung-Ting in the California Cases, asserting that none in fact exists. Second Resp. at 1, 14 ("[B]esides the unlawful share transfer between A-Yung and Pi Yun, *none* of the issues in the current case were raised in the California Leadertech Case. Nor do any of the current claims against Leechin rest exclusively on the share transfer issue . . . [and] none . . . were 'actually litigated[.]'") (citing *Rice v. Crow*, 81 Cal. App. 4th 725, 736 (2000) ("A settlement which avoids trial generally does not constitute actually litigating any

41

issues and thus prevents application of collateral estoppel.")). Finally, Yung-Ting insists that privity remains lacking.

Yung-Ting is correct. First, Yung-Ting was not in privity to the parties in the California Leadertech Case, for all the reasons previously discussed. That is dispositive of Leechin's issue preclusion argument. But also, while a settlement agreement can create an actually litigated issue justifying application of issue preclusion when an issue "could have been raised in the original suit," here the Court has already discussed why the claims and issues in this case could not have been brought in the California Leadertech Case. *Alpha Mech.*, 133 Cal. App. 4th at 1334. Neither is the Settlement Agreement here the sort of stipulated judgment in which a party admits liability, thus "manifest[ing] an intent to be collaterally bound by its terms." *California State Auto. Assn. Inter-Ins. Bureau v. Superior Ct.*, 50 Cal. 3d 658, 664 (1990). In addition, Yung-Ting is correct to point out that Leechin does not specifically identify any issue that was actually litigated in the California Cases or the Settlement Agreement. *See* Second Reply at 11–12. The Court is therefore convinced that the Settlement Agreement here did not actually litigate or necessarily decide any issue which would preclude this case, or any issue, from moving forward.

## Conclusion

For the foregoing reasons, Leechin's first motion to dismiss [73] is granted in part and denied in part, and the second motion to dismiss [120] is denied. Yung-Ting is granted leave to file an amended complaint by May 16, 2023, *only* to add an allegation that this suit is not collusive pursuant to Rule 23.1(b)(2). The stay of

discovery is lifted, and discovery, which has been referred to the Magistrate Judge for supervision, is ordered to resume.

Dated: May 9, 2023

United States District Judge
Franklin U. Valderrama